## IRA R. MELENDY *v.* TOWN OF BRADFORD.

*Highway. Notice. Contributory Negligence. Admissions. Contradictory Charge. Impeached Witness. Exceptions. Deposition.*

1. NOTICE. The evidence as to the findings of the court below in relation to the notice was contradictory, and the exceptions did not purport to state it fully. With the consent of both parties, the court found, not only the special facts as to the notice, but, "that from the plaintiff's acquaintance with the locality, he gave as accurate and definite location to the place of his injury as was practicable for him to do;" and again, "that the place of accident was answerable to the notice, and that the notice sufficiently described the place," etc. The notice set forth that the accident happened in a certain highway, on a "clay hill," and "was particularly occasioned by a stump," etc. The court below found that the accident was occasioned by a stump on a clay hill; that there was no other stump on *a clay hill* in the said highway; and that the highway was properly discribed. *Held,* That the notice was sufficient.

2. ADMISSIONS. The court instructed the jury that they could use the admissions to impeach the credibility of the party as a witness, and then said: "But the jury have the further right to use such admissions as proof that the *fact* was as the party admitted it to be." Subsequently the court charged: "An admission made by a party in the suit that is against his interest is *always* evidence against him; it is evidence that the fact is as he states in his admission." *Held,* No error; that the charge in effect was that it was not only the right of the jury, but their *duty* to consider the admission as tending to prove the fact as admitted.

Melendy *v.* Bradford.

3. CONTRADICTORY CHARGE. INADVERTENT EXPRESSION. When the charge as a whole is correct, and, in the language of ROWELL, J., in *Fassett* v. *Roxbury*, 55 Vt. 552, "breathes the true spirit and doctrine of the law," an inadvertent expression, a mere "slip of the tongue," is not sufficient to set aside a verdict, when it is evident that the jury could not have been misled.

4. EXCEPTIONS—SPECIAL, GENERAL. When a judge drops a word or expression, in the course of a long charge, contrary to its whole theory, and so plainly error as to force the impression of inadvertence, it is the duty of counsel to call attention to it, and not let it pass in reliance upon a general exception.

5. IMPEACHED WITNESS. There was no error in refusing to charge as follows: "If the jury find that the plaintiff testified falsely in regard to any material fact in the case, then upon his testimony alone the jury are not to find any other fact or facts in the case;" because, if the word *falsely* means something less than intentional falsehood, plainly, the request was not sound; if it means intentional falsehood, then there was no occasion for the request, because the exceptions do not show that there was any other material fact than the one upon which the plaintiff was claimed to be impeached, depending on his testimony alone.

6. Effect of the testimony of impeached witness discussed; *Riford* v. *Rochester*, 46 Vt. 738, criticised.

7. DEPOSITION. Ordinarily, the better way to take a deposition is by question and answer; but if the magistrate refuse to so take it, the court cannot say that it is legal error.

8. Two depositions were excluded by the court below, for the reason that the citations were signed by the clerk of the court; and the decision is sustained without any cause for it being assigned.

9. R. L. s. 1033, depositions.

ACTION to recover damages for injuries on a highway. Plea, general issue. Trial by jury, June Term, 1881, Orange County, POWERS, J., presiding. Verdict for the plaintiff. Notice:

*    *    *    "Said highway leading from Brushwood (so called) in Fairlee to Bradford village, and on a clay hill between the residence of Charles Piper and the Waits River road ; and the injury was particularly occasioned by a stump having slid from the bank into the traveled track of the road," etc.

It appeared that there were two roads leading from Brushwood to Bradford village ; that one was called the Rowell Brook road, and the other the Brushwood road ; that the former was 388 rods long, and that the plaintiff was traveling on this one when injured ; and that the accident was occasioned by a stump having slid into the road.

The court found:

" That the plaintiff at the time of his accident was traveling upon the new portion of the Rowell Brook Road for the first time and was not acquainted with any natural objects that might be referred to as monuments except the stump in question by which to locate the place of injury with definite precision; that the hill where the accident occurred was unmistakably a clay hill even to a stranger passing over it for the first time; that neither the hill spoken of in the case as near the Davis Four Corners, nor the place where the small stump 120 feet west of the place of accident had slid down, were hills that would in common parlance be described as clay hills; and that from the plaintiff's acquaintance with the locality, he gave as accurate and definite location to the place of his injury as was practicable for him to do. And that this should be held so, inasmuch as his notice was addressed to men who had such familiar acquaintance with the road that his notice carried precise information respecting the hill that the plaintiff claimed as the place of his accident. In respect to the conflicting evidence touching the terminus of the Rowell Brook Road nearest to Bradford village, the court found that from said last named terminus to Bradford village, and from said terminus to the point marked on the plans as the intersection of the roads marked as ' Old South Road ' and ' Waits River Road,' the road has for many years prior to 1873 and ever since been generally spoken of as Waits River Road, though the older inhabitants, who knew the old South Road, and were accustomed to speak of the road, *as* the old South Road, before the Rowell Brook Road was built, still retain the old name—that an inquirer at Bradford village seeking to know the way to East Corinth or to the Davis Four Corners would be told as a general rule by the residents of that village to start up the Waits River Road instead of being told, to start up the old South Road, and beyond the point of intersection of the Rowell Brook Road the direction would be varied according to the destination, and that the plaintiff in describing this road at the point where the Rowell Brook Road intersected it, gave it the name by which at that time and since it was more generally called. And upon the whole evidence bearing upon the question of notice held that the place of accident was answerable to the notice, and that the notice sufficiently described the place where the accident happened. Upon inquiry by the court it was conceded by both parties that there was no question connected with the sufficiency of the notice to be submitted to the jury."

Melendy *v.* Bradford.

The depositions of Grant and Bragg were excluded on the ground that the citations were signed by the clerk of the County Court.

The other facts are sufficiently stated in the opinion of the court.

*Farnham & Chamberlin*, for the defendant. ·

The notice was insufficient. There are two roads between the residence of Piper and the Waits River Road. The notice gives no indication of which of these two roads is meant, except that it says that the accident occurred on a clay hill; but there were three clay hills upon the shorter of the two roads, and at least one upon the other; and two stumps 120 feet apart on or near the highway on which the accident happened. *Butts* v. *Stowe*, 53 Vt. 600; *Underhill* v. *Washington*, 46 Vt. 767; *Reed* v. *Calais*, 48 Vt. 7; *Bean* v. *Concord*, 48 Vt. 30. There was error in the charge as to the plaintiff's admissions. *Alexander* v. *Blodgett*, 44 Vt. 476. Also error in excluding the two depositions. *Middlebury College* v. *Cheney*, 1 Vt. 336; *Commissioners* v. *Ross*, 3 Bin. (Penn.) 539; *Bryden* v. *Taylor*, 2 Harr. & J. (Md.) 396; *Ellis* v. *Eastman*, 38 Cal. 195. Also error in admitting Melendy's deposition. *Foye* v. *Leighton*, 24 N. H. 29; *Meyers* v. *Murphy*, 60 Ind. 282; *Bank* v. *Tory*, 30 Iowa, 85; *Pralus* v. *Pacific, etc., Co.* 35 Cal. 30. Also error in refusing to comply with 12th request. 47 Barb. 404; 29 N. Y. 471.; 2 Ired. 250. ·

*S. M. Gleason*, for the plaintiff.

A notice could not well be drawn that could not be made more definite. It is a reasonable degree of accuracy and certainty, under all circumstances, in these matters, that the law demands.

In the case at bar, the County Court found, in substance, as a question of fact, that the notice, in respect to the location of the place of injury, was definite to a reasonable degree.

The decision is not revisable on error. *Ranney* v. *Sheffield*, 49 Vt. 191.

Unless upon the face of the exceptions it appears that the whole testimony was clearly and legally insufficient to support the finding of the court, it will be presumed that the finding and decision were correct. *Emerson* v. *Young*, 18 Vt. 603 ; *Brattleboro East Society* v. *Reed*, 42 Vt. 76, 78.

But we insist the notice was sufficient, and is clearly distinguishable from the notice in *Law* v. *Fairfield*, 46 Vt. 425 ; *Babcock* v. *Guilford*, 47 Vt. 519 ; *Reed* v. *Calais*, 48 Vt. 7.

The 12th request was properly refused. *State* v. *Roe*, 12 Vt. 110 ; *Riford* v. *Rochester*, 46 Vt. 738. There was no error as to the depositions. R. L., ss. 818, 1027, 2598, 2635 ; *Coates* v. *Canaan*, 51 Vt. 132.

The opinion of the court was delivered by

VEAZEY, J. I. Under the rule announced in *Law* v. *Fairfield*, 46 Vt. 425, and followed in subsequent cases, there was no error in the ruling of the County Court holding the notice sufficient.

The court, with the consent of both parties, found, not only the special facts relating to the notice, but, " that from the plaintiff's acquaintance with the locality, he gave as accurate and definite location to the place of his injury as was practicable for him to do ;" and again, " that the place of accident was answerable to the notice, and that the notice sufficiently described the place where the accident happened."

The evidence, upon which the findings were made, appears to have been more or less contradictory, and the bill of exceptions does not purport to state it fully.

II. One ground of defence was contributory negligence. The County Court charged the jury at length upon that subject and no error is now alleged as to that part of the charge. But connected with this branch of the case there was evidence tending to show that the plaintiff had made declarations amounting to admissions after the accident, that he was careless, and that the accident resulted from his carelessness. The alleged defect of the highway was a stump that had fallen down the bank into the

traveled track. This was on what was called on the trial the new road, which was built after a washout of the old road in the freshet of 1869. The plaintiff was a witness in his own behalf and testified as to the happening of the accident and why he did not see the stump in season to avoid it, and that his attention was not diverted from his team or the road, but admitted that back some distance he had been looking across to the old road. The defendant's evidence tended to show that he said, when being carried home after the accident and subsequently, that his attention was diverted to the old road at the time of driving on to the stump, and that it was this carelessness which caused the accident. This discrepancy between his alleged statements before the trial and his testimony on trial gave occasion for instructions to the jury on the subject; and instructions were given at length, to which the defendant excepted.

There was evidence tending to show the plaintiff's mind was confused by reason of his injuries, when he made the alleged declarations. The court, after calling attention to the discrepancy, said : " If the plaintiff made such statements intelligently and understandingly, when he knew what he was talking about, it would be very strong evidence against the claim that he is making here. It would be strong evidence tending to show that he in fact was careless," etc. This proposition was repeated two or three times, in different forms and pointedly, in the course of the charge. But after first stating it the court said : " Declarations or admissions of this character, when they are made by a party to the suit, may be used by the jury not only for the purpose of impeaching the credibility of the party as a witness, not only affecting his trustworthiness as a witness, but the jury have the further right to use such admissions as proof that the *fact* was as the party admitted it to be." The defendant now claims that this was error ; because the court should have gone further and told the jury it was not only their right but their duty to consider the admissions as tending to prove the fact as the party admitted it. This is precisely what the court did repeatedly in substance. One form of statement subsequently used was this :

"An admission made by a party in the suit that is against his interest is *always* evidence against him; it is evidence that the fact is as he states it in his admission."

It is not claimed that the statement as to what the jury might do was error. That being preceded and followed by the statement as to the invariable effect of such evidence made the charge complete. It is not easy, and generally not best, to embrace all the propositions involved, in a single sentence, in charging a jury.

But further error is alleged on the ground that the charge was contradictory. After laying down, discussing and illustrating the rule as above indicated, and in getting the attention of the jury to the double effect of the contradictory statement, first, as impeaching the credibility of the witness, the court said: "Secondly, you may go further than that (you are not bound to), but you may inquire which of the statements is the truth of the matter, and you may adopt which one you find to be the truth." The error charged is in the parenthetical clause. If there is fair ground for holding that the use of the words, "you are not bound to," misled the jury, then there was error. The jury were bound to inquire which of the statements was true; and if they understood that they were not so bound, they were misled. Notwithstanding the apparently plain expression as we see it in print, it seems to a majority of the court that there is no fair ground for holding that the jury were misled.

It is perfectly apparent that the learned judge did not mean to be understood as the words indicate. The idea is entirely contrary to the whole drift and tenor of his charge, covering two or three printed pages on this point. Immediately following the part quoted is the statement: "So you see the office of this kind of contradiction is, first, to impeach the credibility of the plaintiff as a witness in the case; and, secondly, to establish the fact as he said it was at the time, if you find that was the truth." Then follows the other statement above quoted, beginning, "An admission made by a party," etc. The charge as a whole and in every part shows that the presiding judge had a perfectly correct idea in his mind, and was constantly and repeatedly giv-

Melendy v. Bradford.

ing expression to it. If we were not bound by the record as certified by him, the conclusion would be irresistible that he was misreported in the parenthetical clause.

But treating the record as true, as we are bound to, we do not think the jury could have been misled by these few words dropped by inadvertence, as they must have been, in the midst of a long charge not only breathing " the true spirit and doctrine of the law," to borrow the language of ROWELL, J., in *Fassett* v. *Roxbury*, 55 Vt. 552, but in terms repeatedly and correctly stating the rule. In *Bovee* v. *Danville*, 53 Vt. 183, it is said that " circumstances might possibly occur where inconsistent instructions might not work confusion in the minds of the jury." We think this is a case where the instructions could not have had that effect. In *Nave* v. *Flack*, 90 Ind. 205, s. c. in Alb. Law Jour., May 10, 1884, ELLIOTT, J., says: " But an instruction is not to be disposed of by dissection. If good as a whole it will stand. Few rules are better settled than that an instruction is to be taken as an entirety." Furthermore, no special exception was taken to these words. We think that when a judge drops a word or expression, in the course of a long charge, contrary to its whole theory, and so plainly error as to force the impression of inadvertence, it is the duty of counsel to call attention to it, and not let it pass in reliance upon a general exception in the event of an adverse verdict. The trial of a case should have a higher object than to catch at " slips of the tongue," that plainly could not have influenced the result. One of the evil results of stenographic reporting of cases has been to afford counsel an opportunity to overhaul the record for errors in the nature of mere lapses so insignificant as to have passed unnoticed at the time, and that formerly found no place in the record, and never could have affected the verdict. If the new system drives courts to greater degree of exactness, then counsel should be held to corresponding degree of fairness.

III. The 12th request for instructions was as follows: " If the jury find that the plaintiff has testified falsely in regard to

any material fact in the case, then upon his testimony alone the jury are not to find any other fact or facts in the case."

To the neglect of the court to- charge as thus requested the defendant excepted.

If the word " falsely " is to be taken as meaning, in the connection used, something less than intentional falsehood, the request plainly was not sound, and it was not error to neglect to charge according to the request.

If it is to be taken as meaning intentional falsehood, then we think it was not predicated on evidence or any state of facts that warranted such instruction.

Admitting as claimed, and as some authorities indicate, that false testimony, in the sense of perjury, upon a material fact, so discredits a witness that no other fact should be found upon his testimony alone, yet all the testimony of the perjured witness in the case is to be weighed and considered, notwithstanding the impeachment upon some point, in the light of the manner in which it is given and its consistency and inherent probability on the other points. *Riford* v. *Rochester*, 46 Vt. 738. That case went further in the opinion, and it was said that if from such consideration of the testimony it was found convincing, the jury might properly base a finding upon it; but some members of the court, then and now, think that was going beyond the point required in that case or intended to be decided, and that the case was reversed upon the ground that the court below practically excluded the testimony of the impeached witness from all consideration.

But however that may be, there is nothing to show in this bill of exceptions that there was any other material fact, than the one upon which the plaintiff was claimed to be impeached, depending on his testimony alone. It does not appear that he denied making the declarations testified to in respect to his attention being diverted to the other road.

The only discrepancy between his testimony and the testimony of the witnesses as to his admissions is that already stated. So far as shown, his testimony wherein it was unsupported by other

evidence and circumstances, was only as to minor details not material to his right of recovery. Upon the point of difference between his testimony and declarations the court fully instructed the jury, as shown in the discussion of the other question.

The 12th request seems to us to have been a not unusual effort to get instructions not applicable to the case, but tending to distract the minds of the jurors.

IV. The deposition of Denison S. Melendy was properly admitted. Ordinarily, the better way of taking a deposition is by question and answer, rather than in narrative form; and a magistrate should not refuse to take it in that way upon request; but as our statute does not prescribe the form, but only requires that a witness " shall be carefully examined," the court cannot say it is legal error to so refuse. Sec. 1033, R. L. A refusal would often be likely to suggest to the trier connivance between the magistrate and party or counsel, that would be likely and perhaps ought to detract from the weight of the evidence.

V. A majority of the court agree that the depositions of Grant and Bragg were properly excluded, but do not agree upon the grounds upon which they were not admissible, therefore nothing can be said as the opinion of the court further than that the exception to the ruling excluding them is not sustained.

The foregoing are the only exceptions now urged.

Judgment affirmed.

Ross, J., dissented.